IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SELECTHEALTH, INC., <br> Plaintiff, <br><br> vs. <br><br> JAMES E. RISINGER II, <br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS <br><br> Case No. 2:13-CV-773 TS |

This matter is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction. For the reasons set forth below, the Court will deny Defendant's Motion.

I. BACKGROUND

Plaintiff SelectHealth, Inc. is a health insurance provider in the Intermountain West and is a Utah corporation.[1] Defendant James E. Risinger is a resident of the state of Texas.

In December 2011, Plaintiff contacted Defendant about acquiring the domain name www.selecthealth.com, which Defendant owned. After the parties entered negotiations to purchase the domain, Defendant copied Plaintiff's website information from www.selecthealth.org and pasted it to his own website, www.selecthealth.com. Defendant also attached a registration survey to his website where visitors could register for health services.

---

[1] Plaintiff is a subsidiary company of Intermountain Health Care, also a Utah corporation.

1

Defendant's website, displaying content from Plaintiff's website, received over 1,200 emails and 637 registrations, of which 622 registrations provided addresses in the state of Utah. Defendant then relayed this information to Plaintiff, including the specific references to the Utah registrants, allegedly in an attempt to improve negotiations with Plaintiff, and drive up the price of the www.selecthealth.com domain name.

Plaintiff alleges that Defendant's actions have caused confusion and as a result Plaintiff has suffered damages. Plaintiff filed suit in the District of Utah and Defendant disputes personal jurisdiction.

## II. PERSONAL JURISDICTION STANDARD

Plaintiff carries the burden of establishing personal jurisdiction over Defendant.[2] "'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"[3] "When the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make a prima facie showing."[4] "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[5]

---

[2] *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[3] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[4] *Bell Helicopter Textron, Inc. v. Heliqwest Int'l., Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

[5] *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

"It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[6] To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[7]

The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction. Only specific jurisdiction is at issue here. When the "defendant has purposely directed his activities at residents of the forum," courts in that state may exercise specific jurisdiction over cases that "arise out of or relate to those activities."[8] In order for the Court to find specific jurisdiction, there must be "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."[9]

If the Court finds that a defendant had adequate minimum contacts with the forum state, the Court must also then determine whether personal jurisdiction is reasonable in light of the circumstances surrounding the case or, in other words, that exercising jurisdiction would not offend traditional notions of "fair play and substantial justice."[10] Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most

---

[6] *Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

[7] *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[8] *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

[9] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

[10] *Burger King*, 471 U.S. at 476.

efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive policies.[11]

III. DISCUSSION

"The minimum contacts test examines the number and nature of a defendant's contacts with the forum."[12] Plaintiff does not contend that the Court has general jurisdiction over Defendants. Therefore, the Court will focus its analysis on specific jurisdiction. Plaintiff asserts that the Court has jurisdiction because (1) Defendant purposely directed his activities at residents of Utah and (2) Plaintiff's injuries arise out of Defendant's forum-related activities.

A.   PURPOSEFUL DIRECTION

The Tenth Circuit has instructed that purposeful direction can be found when there is an intentional act that was expressly aimed at the forum state with knowledge that the brunt of the injury from the act would be felt in the forum state.[13] Plaintiff offers four reasons why the Court should find that Defendant purposely directed his actions toward Utah residents: (1) Defendant was on notice that Plaintiff was a Utah-based company; (2) Defendant duplicated Plaintiff's website; (3) Defendant used information obtained from the duplicated website to attempt to extract a higher sales price for www.selecthealth.com; and (4) Defendant entered into negotiations with Plaintiff, a Utah-based company, to sell www.selecthealth.com.

   *1. Notice*

Plaintiff alleges that it federally registered SELECTHEALTH and other related marks in 2007, four years before Plaintiff and Defendant entered into negotiations. Therefore, Plaintiff

---

[11] *Bell Helicopter*, 385 F.3d at 1296.

[12] *Hartman v. DynCorp Int'l, LLC*, No. 2:12-CV-364 TS, 2012 WL 4480553, at *2 (D. Utah Sept. 29, 2012).

[13] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008).

asserts that Defendant was on notice that any actions he took related to the SELECTHEALTH mark would have effects in Utah and subject him to suit there.

Defendant argues that Plaintiff's registration of SELECTHEALTH in 2007 did not put Defendant on notice because under *Webstat.com v. Web Tracking Services, LLC*,[14] Defendant had no duty to continue to check the trademark registry database after it had registered the domain name.[15] However, evidence in the pleadings demonstrates that Defendant was on notice that Plaintiff was a Utah company and that his actions would be felt in the forum state.

In the email that Defendant drafted and sent to Plaintiff on September 5, 2012, Defendant purposely informed Plaintiff that 622 survey registrants originated from Utah.[16] This suggests that Defendant knew Utah registrants would be of greater significance to Plaintiff because Plaintiff was a Utah based company. In addition, the web content that Defendant copied and pasted to his website reveals Defendant knew his actions would be felt in Utah because several images contain corresponding quotes given by health care customers living in Ogden, Salt Lake City, and American Fork, Utah.[17]

The Court does not hold that Defendant had an obligation to check the trademark registry after he registered his domain name. However, based on the facts of this case, Plaintiff was sufficiently put on notice that the SELECTHEALTH trademark was owned by a Utah company and that Defendant's actions in copying the content and pasting it to www.selecthealth.com would be felt in the forum state of Utah.

---

[14] No. 2:03-CV-977 PGC (D. Utah July 15, 2004) (unpublished).

[15] *Id.* at *13.

[16] Docket No. 19 Ex. C.

[17] Id. Ex. B.

### 2. Duplication of Plaintiff's Website

Plaintiff alleges that Defendant copied content from www.selecthealth.org and posted it on his own domain to increase Utah-based web traffic. Plaintiff claims it "never gave permission, implicitly or explicitly, for [Defendant] to copy [Plaintiff's] webpage."[18] Plaintiff asserts that this act alone subjects Defendant to Utah's jurisdiction for three reasons. First, listing a large Utah-based company with substantial connections to Utah on Defendant's website shows that Defendant's actions were expressly aimed at Utah. Second, misappropriating a Utah mark ensured that confusion would be felt in Utah by Utah residents. Finally, targeting a large Utah company is sufficient to subject Defendant to Utah's jurisdiction.

Defendant relies on *Shrader v. Biddinger*[19] to argue that Defendant is not subject to jurisdiction in Utah because the alleged copied material was not purposely directed at Utah, but to a "nation-wide or world-wide audience . . . with no inherent interest in or tie to the forum state."[20] However, *Shrader* is easily distinguished from this case. The defendant in *Shrader* posted defamatory remarks about the plaintiff on a website that had no specific ties to the forum state of Oklahoma. Nor was the posted content directed to an audience residing in Oklahoma. The *Shrader* court dismissed the case for lack of personal jurisdiction because the defendant directed his defamatory posting to a nationwide audience and not specifically toward the forum state of Oklahoma or an Oklahoma audience.

---

[18] Docket No. 18, at 13.

[19] 633 F.3d 1235 (10th Cir. 2011).

[20] *Id.* at 1240.

6

In this case, Defendant copied web content from a Utah-based company and attached it to his own website to help him "survey the demographics of visitors to the domain name."[21] Consequently, the copied content garnered information from several hundred Utah residents. The Court finds that Defendant purposely targeted residents of the forum state of Utah and not a general nationwide audience.

*3. Attracting Utah Residents*

Plaintiff alleges that Defendant used information obtained from the duplicated website to extract a higher sales price for the www.selecthealth.com domain name. Plaintiff also alleges that Defendant's effort in copying content from www.selecthealth.org was an attempt by Defendant to attract Utah residents to his website, thus providing him with statistical information that would assist him in extracting a higher purchase price from Plaintiff.

Plaintiff alleges that over the course of two months, Defendant received over 1,200 emails through the copied website and 637 website visitors registered their personal information, 622 of whom provided addresses in the state of Utah. Plaintiff argues that these statistics show Defendant successfully directed his actions to Utah.

Defendant contends that "maintenance of a website does not subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state."[22] Although Defendant's statement of the law is true, website owners and operators are subject to personal jurisdiction in the forum state if their actions are expressly aimed at residents of the forum state.[23] In this case, Defendant expressly

---

[21] Docket No. 21, at 12.

[22] *Shrader*, 633 F.3d at 1241; *Soma Med.*, 196 F.3d at 1297-98; *Hartman*, 2012 WL 4480553.

[23] *Calder v. Jones*, 465 U.S. 783, 789 (1984).

aimed the contents of his website at Utah residents because he used copied website content from a Utah-based company to "survey the demographics of visitors to the domain name."[24]

   4. *Negotiations With Utah-Based Plaintiff*

Plaintiff alleges that Defendant purposely caused confusion by copying the website trademark material, and did so to drive up the price of his domain name. Plaintiff also alleges that Defendant offered to include the information he obtained from the 622 Utah registrants as part of the deal if Plaintiff would pay his demanded price. Thus, Plaintiff asserts that Defendant attempted to use his Utah-directed actions to negotiate with a Utah company, thus purposely directing his actions to the forum state of Utah.

Defendant argues that Plaintiff reached out to Texas when Plaintiff contacted Defendant to negotiate the purchase of www.selecthealth.com. Therefore, Plaintiff's solicitation aimed at Texas cannot create specific personal jurisdiction in Utah.

Defendant is correct that Plaintiff's Texas-aimed solicitations do not necessarily create personal jurisdiction in Utah. However, Defendant's subsequent actions do constitute purposeful direction under the minimum contacts standard. Defendant responded to Plaintiff's solicitation by copying Plaintiff's website content and using it to allegedly extract a higher sales price from Plaintiff. As a result, Defendant's actions are alleged to have caused Plaintiff harm and potentially misled Utah consumers.

Based on the foregoing, the Court agrees with Plaintiff that Defendant purposely directed his activities to the state of Utah.

---

[24] Docket No. 21, at 12.

B.  ARISE OUT OF

Having determined that Defendant purposefully directed his activities at Utah, due process next requires inquiry into whether Plaintiff's injuries arise out of Defendant's contacts with Utah.[25] There is no dispute that, at the very least, Plaintiff's copyright infringement claims arise out of Defendant's contacts with the forum. Plaintiff alleges that Defendant misappropriated its copyrighted material, trade names, trade dress, and trademarks and displayed this information on his website.

Defendant argues that Plaintiff failed to establish any real injury arising out of Defendant's display of the copied website material because he did not sell or otherwise provide Plaintiff's products or services to Utah consumers. Indeed, Defendant claims that he did not contact any of the registrants collected from the copied content. Defendant also argues Plaintiff failed to establish that it has lost customers, failed to make sales, suffered damage to its reputation, or suffered any other damages as a result of the copied content.

Plaintiff has alleged that it has been harmed by Defendant's actions. Without any evidence to the contrary, at this stage in the litigation the Court must accept Plaintiff's allegations as true. As a result, the Court finds that Plaintiff's copyright claims arise out of Plaintiff's contacts.

C.  FAIR PLAY AND SUBSTANTIAL JUSTICE

When Defendant is shown to have had adequate minimum contacts with the forum state, the Court must also determine whether exercising jurisdiction would not offend traditional notions of fair play and substantial justice. The Court considers the following five factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the

---

[25] *Dudnikov*, 514 F.3d at 1078.

9

plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies.

Defendant argues that the burden to litigate this case in Utah would offend traditional notions of fair play and substantial justice. However, Defendant has failed to identify any specific burden placed on him. Further, the burden on the defendant, while always a primary concern, will be considered in light of the other relevant factors.[26] In this case, Utah has a considerable interest in resolving this dispute because Plaintiff is a Utah-based company engaged in supplying health-care insurance to Utah residents. Moreover, Plaintiff has a significant interest in receiving convenient and effective relief in Utah because Plaintiff operates in the state of Utah and does not engage in business affairs in the state of Texas. Finally, the interstate judicial system's interest and the shared interest of Utah and Texas are well-served by resolving the dispute in Utah. Therefore, the exercise of jurisdiction over Defendant in this forum will not offend traditional notions of fair play and substantial justice.

---

[26] *World-Wide Volkswagen Corp.*, 444 U.S. at 291.

IV.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 13) is DENIED.

DATED  April 29, 2014.

BY THE COURT:

_____
TED STEWART
United States District Judge